The STATE of Ohio, Appellee,

v.

McCONNELL, Appellant.

[Cite as *State v. McConnell,* 170 Ohio App.3d 800, 2007-Ohio-1181.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21684.

Decided March 16, 2007.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellee.

Jay A. Adams, for appellant.

BROGAN, Judge.

{¶ 1} Michael McConnell appeals from the trial court's decision and entry overruling his motion for leave to move for a new trial.

{¶ 2} In his sole assignment of error, McConnell contends the trial court erred in overruling his motion without an evidentiary hearing. He asserts that the trial court should have granted him leave to move for a new trial, or at least should have held a hearing on the matter, because he possesses newly discovered evidence and was unavoidably prevented from filing a timely new-trial motion under Crim.R. 33.

{¶ 3} McConnell was convicted of raping his eight-year-old daughter and was sentenced to life in prison on June 10, 2003. The conviction was based largely on his daughter's testimony that he had put his "front" in her "back." The state's evidence suggested that the child's reference to McConnell's "front" meant his penis and her "back" meant her anus. The state also presented evidence that a medical examination of the child revealed a small anal fissure consistent with penile-anal penetration. On cross-examination, however, the child gave testimony suggesting that McConnell's penis touched her buttocks but did not penetrate her anus. While noting an apparent contradiction in the child's testimony, we nevertheless affirmed the conviction and sentence in *State v. McConnell*, Montgomery App. No. 19993, 2004-Ohio-4263, 2004 WL 1802142. McConnell subsequently filed a March 20, 2006 amended motion for leave to move for a new trial based on newly discovered evidence. Attached to the motion was a March 9, 2006 affidavit from Clare McConnell, who averred as follows:

{¶ 4} "1. I am the wife of Michael McConnell and the mother of the alleged victim in this offense.

{¶ 5} "2. Sometime in January 2006, my daughter came to me and said that she felt very bad. She told me that nothing had happened between her and her father, that she may have dreamed that this had happened.

{¶ 6} "3. Further, affiant saith naught."

{¶ 7} In his motion, McConnell recognized that Crim.R. 33(B) ordinarily requires a new-trial motion to be filed within 120 days of a jury's verdict. He also correctly noted that Crim.R. 33(B) allows a trial court to extend the time for filing a new-trial court motion "[i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely" within the 120-day period. McConnell then asserted that he had been unavoidably prevented from discovering the evidence upon which he intended to rely, to wit, the alleged recantation by his daughter set forth in his wife's affidavit.

{¶ 8} In support of McConnell's motion, his attorney asserted:

{¶ 9} "As this Court is well aware, following the verdict of the jury, finding Michael McConnell guilty of rape, and thereby mandating a life sentence, Michael McConnell was taken into custody and has been incarcerated since the date of that finding. Additionally, it is clear that Mr. McConnell has not been permitted to have contact with the alleged minor victim in this case. Therefore, it is respectfully submitted that any and all information that would have come from the minor in this case, would not have come directly from the minor child to Michael McConnell, given the lack of contact. Undersigned counsel, as an officer of this Court, represents that he was recently contacted by the mother of the minor child in the above-captioned cause. Undersigned counsel was provided with certain information, and based upon that information, ultimately met with the minor child, who was alleged to have been the victim in the above-captioned cause.

{¶ 10} "Following that meeting, undersigned counsel is aware that there is information which needs to be set forth in Affidavits, as well as in testimony at a hearing before this Court, which would give Michael McConnell grounds for a new trial. Undersigned counsel respectfully submits that, based upon the information which will be set forth in Affidavits, as well as which was relayed to undersigned counsel, Michael McConnell was clearly, unavoidably prevented from discovering the new evidence, and that, upon a hearing of this matter, this will be demonstrated by clear and convincing proof.

{¶ 11} "It is respectfully submitted that the statements made to undersigned counsel, as well as the statements which will be set forth in the Affidavits, have an indicia of reliability, and undersigned counsel would respectfully request this Court grant leave to file a motion for a new trial, given the mandates of Ohio Criminal Rule 33.

{¶ 12} " * * * Undersigned counsel respectfully submits that the information contained herein, as well as the lack of contact with the alleged victim in this case, clearly demonstrates that Michael McConnell was unavoidably prevented

from filing a motion in a timely fashion, given the only recent statements of the minor child."

{¶ 13} On June 7, 2006, the trial court overruled McConnell's motion for leave to move for a new trial. In so doing, the trial court first rejected the proposition that McConnell's imprisonment and inability to contact his daughter prevented him from discovering the new evidence within 120 days of the jury's verdict. The trial court reasoned that he could have contacted his daughter via either his attorney or his wife and discovered the evidence through "reasonable diligence." The trial court also opined that it was unreasonable for McConnell not to have attempted to contact his daughter if he believed she had provided false trial testimony. In addition, the trial court rejected defense counsel's assertion that "certain information" would be provided in the future to support a new trial. The trial court found the reference to "certain information" to be "too vague and sparse to constitute clear and convincing evidence." Finally, with regard to Clare McConnell's affidavit, the trial court stated that it "is very vague and does not offer any specific evidence." The trial court also noted that the affidavit contained hearsay and that Michael McConnell had not provided any evidence directly from his daughter. In addition, the trial court found the affidavit insufficient to justify a new trial because it "merely impeaches the former testimony" of McConnell's daughter. The trial court also pointed out that the affidavit was controverted by his daughter's trial testimony and the physical evidence of an anal fissure. For these reasons, the trial court held that the "motion requesting leave to file [a] motion for new trial fails to demonstrate a strong probability that [the child's] newly discovered testimony would change the result if a new trial were granted."

{¶ 14} Upon review, we are persuaded by McConnell's argument that, at a minimum, the affidavit attached to his motion for leave to move for a new trial entitled him to a hearing on whether he was unavoidably prevented from discovering his daughter's alleged recantation within 120 days of the jury's verdict. In reaching this conclusion, we do not disagree with the trial court's assessment that McConnell's incarceration alone did not prevent him from discovering the new evidence. We also agree that defense counsel's promise to produce "certain information" in the future was too vague to be meaningful.

{¶ 15} After reviewing the evidence before us, however, we have no basis upon which to conclude that McConnell could have obtained the alleged recantation in his wife's affidavit earlier than he did. As the trial court noted, it is true that McConnell's wife or attorney could have spoken with his daughter sooner and attempted to obtain a recantation. Under the facts of this case, however, we cannot say that their failure to do so demonstrates a lack of diligence. We reach this conclusion for at least three reasons. First, McConnell's wife had no actual

knowledge as to whether the child's sexual abuse allegations at trial were true. Therefore, she had no reason to approach her daughter and attempt to obtain a recantation after trial. Second, and perhaps more important, if McConnell's wife or attorney had done as the trial court suggested and had sought to obtain a recantation from the child, their conduct certainly would have cast doubt on the credibility of the resulting recantation. Indeed, we easily can envision an argument that a recantation obtained at the urging of McConnell's wife or attorney lacks credibility and should be disregarded. Third, as a policy matter, we are reluctant to embrace a rule that would require a father convicted of raping his eight-year-old child to pursue the victim to obtain a recantation of her trial testimony. Even if McConnell personally knew that his daughter's trial testimony was false, he had no reason to suspect that she would recant the testimony prior to January 2006, when the child allegedly spoke about the issue to her mother. Cf. *State v. Condon*, 157 Ohio App.3d 26, 30, 2004-Ohio-2031, 808 N.E.2d 912 (finding newly discovered evidence when "[t]he defendant did not know that the witness would ultimately testify in his favor").

{¶ 16} The state argues that the fact of McConnell's incarceration, without more, did not amount to clear and convincing evidence that he was unavoidably prevented from discovering the evidence within the time limit. In support of its argument, the state cites *State v. Smith* (Mar. 27, 1998), Miami App. No. 97–CA–46, 1998 WL 404458. In that case, Smith was convicted of two counts of raping his stepdaughter in 1993. In 1997, Smith filed a motion for leave to file a new trial motion because the state had allegedly withheld medical records of the victim indicating she had been sexually abused by her natural father in 1984 and 1985. In affirming the trial court's order overruling Smith's motion for leave to file the motion, we noted that he had provided no evidence of misconduct by the state, and he presented no support for his claim that he could not have discovered the records within 14 days of the verdict. We held that Smith's incarceration, without more, did not demonstrate he was unavoidably prevented from discovering the evidence within the time limitation of Crim.R. 33(B). *Smith* is distinguishable because the medical records were available to Smith at any time after he was charged. In this matter, McConnell alleges he did not know of his daughter's recantation until after the time limits expired.

{¶ 17} As for Clare McConnell's affidavit, we disagree with the trial court's determination that it "is very vague and does not offer any specific evidence." According to the affidavit, McConnell's daughter approached her mother in January 2006 and stated that she "felt very bad" and that "nothing had happened between her and her father." In the context of this case, we believe a reasonable interpretation of the alleged admission that "nothing had happened" is that no unlawful sexual activity had occurred. It is true that the child could have been

more specific and could have stated that her father did not place his penis in her anus. But we would not expect such language or specificity from a child of tender years who allegedly was confiding in her mother that she had lied at trial. In our view, the alleged admission that "nothing had happened" between the child and her father was sufficiently specific for present purposes.

{¶ 18} As for the hearsay matter, we would be more troubled if McConnell were relying on his wife's affidavit to support a motion for a new trial, as opposed to a motion *for leave* to move for a new trial. In our view, a trial court reasonably might decline to grant a new trial absent evidence from a child-victim herself recanting her prior testimony. The issue in the present case, however, is whether the affidavit from McConnell's wife is sufficient to warrant the granting of leave to file a new-trial motion or, at a minimum, to entitle McConnell to a hearing on the issue. We see no reason why the affidavit before us is insufficient for purposes of these threshold issues.

{¶ 19} Based on the content of the affidavit from McConnell's wife, we also conclude that he was at least entitled to a hearing on his motion for leave to seek a new trial. We have held that a defendant is entitled to such a hearing if he submits "documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence" at issue. *State v. York* (Feb. 18, 2000), Greene App. No. 99–CA–54, 2000 WL 192433, citing *State v. Wright* (1990), 67 Ohio App.3d 827, 828, 588 N.E.2d 930; see, also, *State v. Mitchell,* Montgomery App. No. 19816, 2004-Ohio-459, 2004 WL 225464, ¶ 7–10 (finding affidavits sufficient to warrant a hearing on whether the defendant was unavoidably prevented from discovering the facts upon which his request for a new trial relied). Notably, the documents at issue in *York* and *Wright* were affidavits from prosecution witnesses recanting their trial testimony against the defendant. Although the affidavit here is from the mother of the complaining witness rather than the child-witness herself, we believe it similarly entitled McConnell to at least a hearing on his motion for leave to move for a new trial. While a trial court has discretion when deciding whether to grant leave to file a motion for a new trial, or whether to hold a hearing on the issue, we conclude, based on our review of the affidavit from McConnell's wife, that the trial court abused its discretion here. At a minimum, the trial court should have held a hearing to consider the issue raised in the affidavit.

{¶ 20} Finally, we are aware of the trial court's belief that the affidavit merely impeaches and contradicts the trial testimony of McConnell's daughter and that it is controverted by medical evidence of a small, anal fissure. Based on these facts, the trial court held that the "motion requesting leave to file [a] motion for new trial fails to demonstrate a strong probability that [the child's] newly discovered testimony would change the result if a new trial were granted." This

finding by the trial court conflates two distinct issues. The trial court's finding goes to the merits of McConnell's right to a new trial rather than the threshold issue of whether he was unavoidably prevented from discovering the evidence upon which he relies. See *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370.

{¶ 21} Moreover, in *Dayton v. Martin* (1987), 43 Ohio App.3d 87, 90, 539 N.E.2d 646, we rejected "a *per se* rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result." Additionally, in *Wright*, 67 Ohio App.3d 827, 588 N.E.2d 930, we found that an affidavit recanting trial testimony by a key prosecution witness does more than *merely* impeach or contradict the witness's prior testimony. We noted that such an affidavit, if believed, would establish the defendant's innocence and, therefore, on its face creates a strong probability of a different result. Id. at 831, 588 N.E.2d 930. We also concluded that the existence of other evidence at trial supporting a defendant's guilt does not necessarily destroy the value and credibility of an affidavit recanting key trial testimony. Id.

{¶ 22} In any event, we need not decide here whether the allegations in the affidavit from McConnell's wife are sufficient to justify granting a new trial. The issue before us is whether the trial court should have granted McConnell leave to move for a new trial or at least held a hearing on the issue. In our analysis above, we have resolved this issue in favor of McConnell. Accordingly, we sustain his assignment of error, reverse the judgment of the Montgomery County Common Pleas Court, and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FAIN and DONOVAN, JJ., concur.